# The Franklin Fire Insurance Company of Philadelphia, *vs.* Alexander Hamill.

An insurance policy for $3000 on machinery, bound the company to pay that sum, in case of damage or loss by fire, unless they "shall, within thirty days after proof of such damage or loss, furnish the insured with a like quantity of any or all of the said goods, and of the same quality as those injured by the fire, or shall make good the damage or loss by paying therefor," &c. Held:

1st. The company had the right, under this policy, to pay the damages in money, or *repair* the old machinery within thirty days, so as to make it as good as it was before the fire.

2nd. In covenant upon this policy the defendants may show, by *parol*, that *after* their liability to repair accrued by their election to do so, and *before* the expiration of the thirty days, they made a valid arrangement with the plaintiff, by which the time for making the repairs was extended beyond the thirty days, and performance of this agreement by them discharges the covenant.

3rd. Enlargement of the time of performance, waiver of performance by the plaintiff, accord and satisfaction, or tender of performance, after the accrual by election of the liability to repair, are *good defences* to an action on this policy, and *parol proof* is admissible to sustain them.

In an action upon a bond *the defendant* may show by parol that the *plaintiff* has waived a compliance with its conditions; he who prevents a thing being done shall not avail himself of the non-performance he has occasioned.

The case of *Watchman and Bratt, vs. Crook*, 5 G. & J., 239, decides, that a *plaintiff* suing upon a contract cannot give in evidence a parol agreement varying or changing its terms, but does not decide that a defendant cannot '' himself of such a defence.

A defendant should never be prevented from making a just and moral defence to any action, because he might, as plaintiff, enforce that defence in a separate and independent action at law.

But this principle in actions of covenant must be taken as applicable in general to defences resting upon parol agreements, made subsequent to a breach of the covenant, or after the happening of the event by which the liability of the defendant has become fixed.

Accord and satisfaction is something more than strict performance or payment; it is doing that by the covenantor which the covenantee accepts in lieu of a performance of the terms of the covenant.

Appeal from Baltimore county court.

*Covenant* by the appellee against the appellants, upon an insurance policy for "$3000 *on goods*," "viz: on steam engine $500, on machinery $2500, of a plaster mill, contained in a three-story brick warehouse," &c.  By the terms of the policy the company agreed to pay, to the extent of $3000, all damage or loss occasioned by fire, within one year, to said property, "unless the said company shall, within thirty days after the proof of such damage or loss, furnish the insured with the like quantity of any or all of the said goods, and of the same quality, as those so injured by fire, or shall make good the damage or loss by paying therefor, according to an estimate thereof to be made by arbitrators indifferently chosen," &c.  The assured was required to give notice to the company forthwith of any loss by fire, and as soon as possible thereafter deliver a particular account and furnish satisfactory proof of such loss.  This is the second appeal in this case, the facts being substantially the same as those upon the first appeal, reported in 6 *Gill*, 87.  The different condition of the pleadings is fully stated in the opinion of this court upon the present appeal.

*Exception.* The plaintiff excepted to the admissibility of the testimony of Smith and Neale, (see 6 *Gill*, 89 *to* 91,) under any of the first five defences relied upon by defendants, which exception the court, (Frick, C. J., Purviance and Le Grand, A. J.,) sustained, and to this ruling the defendants excepted.  The verdict was for the plaintiff for $2444.48, that upon the former trial having been in his favor for

$3049.80. The court having overruled a motion for a new trial, and given judgment in accordance with the verdict, the defendants appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*St. George W. Teackle* for the appellants.

1st. The evidence was admissible to prove an enlargement of the time of performance stipulated for in the policy. It is not a question as to the interpolation of terms into a written contract, but whether, by a subsequent distinct parol agreement, the time for the performance of a contract under seal may not be enlarged? When such evidence comes by way of *defence*, no case can be found in which it has been rejected. The case of *Watchman and Bratt, vs. Crook,* 5 G. & J., 239, cited and relied upon by the other side, was the case of a plaintiff acting *aggressively* upon a contract which he had not performed, and the court said he could not recover *upon the contract* without showing performance, and could not be permitted *in that action* to set up a parol agreement to waive the contract, but the case concedes that such an agreement might have been offered by way of *defence*. The same doctrine is sustained in 2 *Wend.,* 587, 590, 591, *Langworthy vs. Smith.* 3 *Johns.,* 528, *Fleming vs. Gilbert.* 9 *Do.,* 115, *Freeman vs. Adams.* There may even be a substituted contract. 14 *Johns.,* 330, *Lattimore vs. Harsen.* See also 7 *Cowen,* 48, *Dearborn vs. Cross.* 1 *Bailey's Rep.,* 538, *Neil vs. Tilman,* (note a.) *Breese's Rep.,* 132, *Baker vs. Whiteside.* 4 *Seargt. & Rawle,* 241, *Le Fevre vs. Le Fevre.* Such is the law in England. 1 *Esp.,* 35, *Ratcliff vs. Pemberton.*

2nd. It was admissible to show a waiver of the condition of the covenant. This depends upon the former position and follows as a necessary consequence from it, for the enlargement of the time of performance necessarily waives the contract.

3rd. It was admissible to show accord and satisfaction. 22 *Eng. C. L. Rep.,* 89, *Good vs. Cheesman.* 23 *Do.,* 165, *Cartwright vs. Cooke.* I agree that accord and satisfaction *before*

*breach* is not a good plea, because until then there is nothing to satisfy. But here there was a breach, for the property was burned and the mode of satisfaction alone was left open.

4th. It was admissible as tender of performance and refusal. 14 *Pick.*, 156, *Lord vs. Tyler.* 2 *Bibb.*, 219, *Majors vs. Hickman.* 4 *Wash. C. C. Rep.*, 622, *United States vs. Howell.* 8 *Iredell*, 179, *State vs. Cordon.* 10 *Do.*, 193, *Cabe vs. Jameson.*

5th. It was admissible to show fraud. The contract of insurance is purely one of indemnity, of the purest good faith, and the evidence shows that the plaintiff intended and designed a fraud, for the damage complained of was repaired by an expenditure of only $300, and yet the plaintiff, by his own agreement, having got rid of the third party, comes in with his bill of $3000 upon the policy.

*S. Teackle Wallis* for the appellee.

We are trying an action of *covenant*, and the principles of the common law governing that action are alone applicable to the case. We therefore insist that the proposed testimony was inadmissible for any of the purposes for which it was offered, because:

1st. The policy does not give the company the right to elect to repair, but imposes the obligation to pay. The property insured was goods and chattels within the terms of the policy, and the insurers were bound to furnish the insured with the *like quantity* and quality of any or all said goods, or to pay the damages. An offer to *repair* was therefore no compliance with the requirements of the covenant.

2nd. The testimony shows that the agreement to extend the time was made before the estimate of loss was furnished, and therefore *before breach* of the covenant. The breach did not occur upon the happening of the fire. The contract is that if a fire occurs in one year, and the party gives notice and furnishes his *estimate and proof* of loss, &c., and the agreement was made more than two weeks before this estimate was made. Suppose the case of a bond payable one year after the happening of a certain event; it cannot be said

there is a breach after such event has happened, but before the year has elapsed. The authorities are clear that a *parol* agreement *before breach* cannot be pleaded in an action of covenant. 1 *Chitty's Pl.*, 487, 488. 1 *Leigh's Nisi Prius*, 699. 29 *Law Lib.*, 75, 76, 79. 3 *H. & J.*, 291, *Peters vs. Johnson.* 5 *G. & J.*, 239, *Watchman and Bratt, vs. Crook.* 4 *G. & J.*, 305, *Geiser vs. Kershner.* 6 *H. & J.*, 38, *Watkins vs. Hodges.* 1 *H. & J.*, 675, *Harper vs. Hampton.* Such is the law in England. 8 *East*, 344, *Braddick vs. Thompson.* 7 *Taunt.*, 656, *Thompson vs. Brown.* 8 *Do.*, 31, *Sellers vs. Bickford.* *Do.*, 596, *Cordwent vs. Hunt.* 40 *Eng. C. L. Rep.*, 609, *West vs. Blakeway.* Even in New York, loose as the rule is, it has been restricted within limits narrower than those contended for on the other side. 13 *Wend.*, 71, *Delacroix vs. Bulkley.* 10 *Do.*, 180, *Suydam vs. Jones.* The case in 4 *Wash. C. C. Rep.*, 420, concedes that a parol agreement made with the defendant himself would not discharge the covenant. See also 3 *Term Rep.*, 590, *Littler vs. Holland.*

*Reverdy Johnson* on the same side.

It will be conceded there was no contract upon which we could recover except the policy. Now what was this? It was a contract by which they insured us to the amount of $3000 upon certain goods, and in case they were injured, they were to pay us the damage or repair, (according to the theory on the other side,) within thirty days. We must sue upon *this* policy, and to recover must aver and prove:—1st, the execution of the policy; 2nd, the fire; 3rd, notice of loss; 4th, estimate of loss; 5th, expiration of thirty days. Now if there had been an agreement to repair within a less time, say *ten days,* and the underwriters had said they would do so or pay, could we have sued on the policy until after the thirty days? I submit not. It is perfectly well settled, that where there is a contract to pay money on a certain day, no matter what is done in the mean time, no right to sue upon the contract arises until the time comes round. Now if a shorter time would not deprive us of the right to sue, it would seem

to follow that we ought not to be deprived of our right because the parol agreement dispensed the time for more than thirty days. Now why is this? Because it is a *different contract*. A contract under seal cannot be discharged except by a contract under *seal*, or performance. This is a fixed rule. Now is there any exception or qualification which will take this case out of its operation? This evidence is offered for five purposes. If admissible for either, it is impossible to conceive a case in which a contract under seal may not be waived by a subsequent parol agreement.

It may be that a suit may be instituted upon such subsequent parol agreement by the party injured by it, but when suit is brought upon the original contract he must show compliance with the terms of it, or its release by a contract under seal. Such was the case of *Watchman and Bratt*. If, by a parol agreement, any *vital* part of the original contract under seal is varied or waived, it cannot be set up as a defence to a suit upon the contract. 8 *Taunt.*, 596, *Cordwent vs. Hunt*, was a case where a landlord was prevented from putting up a building by request of the tenant, yet the latter sued him upon his lease, under seal, for not putting up the building and recovered, though this subsequent request was set up by *way of defence*. In 13 *Wendell*, 71, *Delacroix vs. Bulkley*, it is decided, that a sealed executory agreement cannot be released or varied by any kind of parol agreement.

But it is also clear, that if a breach has occured, within the meaning of the law, which can be compensated in damages, these may be released by a parol agreement. Now to bring this case within this exception, they must show that we *could sue* before the agreement was made. We could not sue when the policy was made nor after *the fire*, for we were to furnish an estimate of the loss; we could not sue until the expiration of the thirty days. The agreement was made a few days after the fire, and of course before the breach in contemplation of law had occurred. What is meant by a sealed instrument being broken is, that a right of action then accrues; and this *right of action* is what may be waived by a parol agreement.

I have so far considered the right to repair as vested in the

company under the policy.  If they had no right to repair, of course the evidence was properly rejected.  Now had they this right?  It was an *insurance* on *goods* as distinguished from one upon real estate.  In such case the obligation is to furnish *other* goods of the same quantity and quality, or to pay the money.

*John Nelson* for the appellants, in reply.

The parol agreement was made for the benefit of the assured and at his request, and was fully carried out by the company. It is argued that this evidence was not admissible in an action for damages:—1st, because the company had no right to elect to repair, and the agreement was, therefore, a *nude pact.* Even if there was no such stipulation in the policy, it might be an inquiry whether the agreement to repair would not be as valid as if embodied in the policy itself.  But there is no ground for this question, for the true construction of the policy gives the right to elect to repair.  The goods were to be restored.  How restored but by reparation?  The only mode of returning the goods was by repairing them.  Such has been the view of all the counsel in the case up to this time.  The *nar* assumes it; the prayers at the original trial assume it; so in the second *trial* the plaintiff's prayer assumes the same thing.  When the case came up to the Court of Appeals, in 6 *Gill,* 87, no such question was raised or argued, but the court assumed such to be construction of the contract.

2nd. Assuming the company had the right to elect, the question occurs as to the admissibility of the evidence under the pleadings.  The object of a policy is to protect a party against *fire:* it is an *indemnity* against the consequences of fire.  This policy proposes to accomplish this in two ways:— 1st, by repair; 2nd, by payment.  Now when did the liability for the damages attach under the policy?  Was it superinduced by *the fire,* or was it dependent upon any thing subsequent to the fire?  We say the occurrence of the *fire* being the *casus* contemplated by the policy, fixed the liability of the company, not the notice or the estimate of loss, for these are but the means of ascertaining the *quantum* of damages; they do not

fix the liability of the company, which arises from the policy and the *fire*. If the party elected to repair, the policy did not require any estimate of loss. The loss was incurred by the fire,—the means of ascertaining the damages was to be in one of the two ways, by repairing or estimating the loss. This is the contract to which the principles of the authorities are to be applied. The principles are:—1st. Where the terms of the covenant are *absolute* to do certain things, no parol evidence can be received by which to *discharge them*. 2nd. Where the covenant is sounding in damages and a breach has occurred, there parol evidence may be offered as to recompensing the damages. I admit the law of the first proposition, but no case can be found in which an agreement to enlarge or extend *the time* of the performance of the contract is not good, provided it be founded upon a good consideration. So in the case of unascertained damages, the evidence was admissible under all the pleas of the defendant. The case of *Watchman and Bratt*, 5 *G. & J.*, 239, only decided that the plaintiff could not maintain the suit, because he was obliged to set out the performance of the obligations of the covenant, which were conditions precedent to the payment of the money—*time* being of the *essence* of the contract. The court say, that though the parties cannot recover upon the original covenant, they *may* recover upon the subsequent agreement: this, of course, concedes that they had the *right* to make—that it was not *void* but was *valid*, and founded upon a sufficient consideration. The plaintiff here could have sued upon the *subsequent* agreement. The case in 3 *H. & J.*, 291, *Peters vs. Johnson*, asserts no other principle. The case in 4 *G. & J.*, 305, was one of a *partial payment*, which does not discharge one from the obligation to pay the whole. The case in 6 *H. & J.*, 38, *Watkins vs. Hodges, et al.*, was an action of *assumpsit*, and decides that such a contract may be extended by agreement of parties, but they do not say, that in case of a sealed contract the agreement to extend the time is not good. There is then no Maryland case which decides, that the agreement is not *good and binding between* the parties, and if violated would have been the foundation for an action. The English cases,

1 *East.*, 619, *Heard vs. Wadham*, is the same as that of *Watchman and Bratt*, that a *plaintiff* could not maintain an action upon the covenant without avering and proving the performance of the conditions precedent; in 625 it is conceded that a party may *defensively* set up an agreement to extend the time. The case in 16 *East.*, 344, *Braddick vs. Thompson*, decides, that an agreement by parol, without any *consideration*, to abandon and relinquish the *whole* covenant could not be pleaded. This does not touch the question as to the extension of the time of performance. Such is the distinction taken in all the cases. The case in 7 *Taunt.*, 656, *Thompson vs. Brown*, (2 *Eng. C. L. Rep.*, 247,) was an action upon a charter-party which had not been complied with, and is like that in 1 *East.*, where a party cannot sue upon a covenant which he has not himself performed.

The case in 8 *Taunt.*, 596, *Cordwent vs. Hunt*, is the only *case* where a *defendant* set up the plea, and that was one, the effect of which was to *discharge and rescind* the entire contract, not one to extend the time. The covenant was one to do some absolute fixed thing and not one sounding in damages.

The cases on which we rely maintain the doctrine for which we contend, that in the case of a defendant he may set up the defence. 1 *Esp.*, 35, expressly decides, that a contract to enlarge the time for the discharge of a vessel beyond the terms of the *charter-party* was a good and valid defence to any claim for damage, and was a bar to the action. This is precisely our case. In 2 *Wendell*, 587, a parol enlargement of the time set up in the sealed instrument for the performance of the covenants is decided to be good. 3 *Johns. Rep.*, 528, *Fleming vs. Gilbert*; 9 *Johns.*, 116, *Adams vs. Freeman*, both recognise the distinction between plaintiffs and defendants. So in 7 *Cowen*, 50, and 10 *Iredell*, 193.

But upon another defence the evidence was clearly admissible. We have *plead tender and readiness* to perform and refusal on the part of the plaintiff to accept. Can there be a doubt but that in an action upon a covenant performance or a tender to perform is a good defence? *Breese*, 132, *Baker vs. Whiteside.* 1 *Bailey*, 538, *note a.* In a policy of in-

surance you may waive every stipulation by parol. *Allegre vs. Maryland Ins. Co.*, 6 *H. & J.*, 408, shows, that if a company refuses to pay, this waives the obligation to produce the estimate of loss. If they can do this may they not waive or enlarge the time? The right of action immediately accrues upon the refusal.

As to the question of fraud: It would be monstrous if a party could put an underwriter off his guard by such an agreement as this, and then come in and sue for the non-compliance which he had himself superinduced.

MASON, J., delivered the opinion of this court.

This case has already been before this court and is reported in 6 *Gill*, 87. Upon the former appeal it was held that there was but one plea in the case, that of *non infregit*, and that the evidence offered by the defendants was inadmissible *under that plea*.

The case as now presented shows, that upon the second trial in the court below under a *procedendo*, the defendants relied upon six additional defences, which, under the agreement between the parties, we are to treat as having been regularly pleaded.

These defences are:—1st, enlargement of the time of the performance of the covenant; 2nd, a waiver of performance by the plaintiff, &c.; 3rd, accord and satisfaction; 4th, tender of performance, &c.; 5th, fraud, and 6th, all other defences properly pleadable, &c.

The admissibility of the testimony of Smith and Neale, under the above state of pleadings, is the question presented by the present record.

The defendants attempted to show by these witnesses, that they had elected under the policy of insurance, to *repair* the injured property, which consisted of machinery, and that two or three days after the fire they had offered to repair said machinery, but that by the consent and request of the plaintiff said repairs were agreed to be postponed, and the period of thirty days allowed by the policy for that purpose, enlarged.

until the house could be repaired so as to protect the machinery from the weather, and that by virtue of that understanding the repairs were not made within the thirty days, but eventually and in a reasonable time the machinery was repaired, and placed in as good condition as it was before the fire.

This testimony is objected to upon two grounds :—1st. Because the policy required the defendants to pay the damages in money, or to "furnish the insured with the like quantity of any or all the said goods, and of the same quality as those so injured by the fire," and that to offer to repair would be no compliance with the requirements of the covenant ; and 2nd. Because the original agreement was under seal, and therefore no evidence of any subsequent parol agreement would be admissible to vary or modify the covenant.

As to the first objection : The extent of the obligation of the insurance company under this policy, was to place the insured in as good a condition as he was before the fire occured. This was to be done in one of two ways :—first by paying the damages sustained in money ; or secondly, by renewing the machinery. It would seem to be a full compliance with the latter branch of this obligation, if the defendants had so far renewed or repaired the old machinery as to have made it as good as it was before the fire. If this had been done within the thirty days provided for in the policy of insurance, the terms of the covenant would have been complied with, and the defendants discharged. Any evidence therefore which would tend to show that this had been done, we think, would clearly have been admissible under the pleadings in the cause. Ellmaker vs. Franklin Ins. Co., 5 Barr. (Penn. Rep.,) 183. 11 Metcalf, 195. Angell on Insurance, sec. 268.

Nor do we think the second objection urged to the admissibility of this testimony tenable.

The defendants did not propose to show by this evidence, as was contended by the plaintiff, that an independent parol agreement had been substituted by the parties in the place of the original covenant, and that the latter had thereby been superseded. The evidence objected to tended to show, in

our judgment, that after the liability of the defendants had accrued, a valid arrangement was made by the contracting parties, by way of adjustment of the matters in controversy between them, and that the same had been performed by the defendants. If this be true the defendants were discharged, and of course the testimony was admissible. It is not necessary to say whether, technically speaking, a breach of the covenant had actually taken place. It is sufficient that the defendants' liability to repair, (by their election to repair, instead of paying the damages in money,) had accrued. They were therefore in a condition to tender performance of the terms of the covenant, to offer accord and satisfaction, or to do other acts by way of adjustment, which would operate as a discharge of the covenant. In this condition of their case, any evidence offered by the defendants resting in parol, would be admissible to show the existence of the defences relied upon by them in their pleas.

We have examined the numerous authorities cited in argument, and we can find no case based upon well adjudged principles which conflicts with these views. On the contrary, most of the cases support them. In our judgment they are founded in good sense and sound justice. An opposite doctrine would be fraught with mischief and injustice, and would be promotive of fraud.

We can discover no material difference between this case and that of *Fleming vs. Gilbert*, *3 Johns. Rep.*, 528. In the latter case the defendant did, within the time limited, tender to perform the stipulations of his covenant or bond, but the plaintiff discharged him from the strict and literal performance of the bond, and entered into another engagement with him respecting the matter. Upon this state of the case, Judge Thompson, who delivered the opinion of the court, announces these principles, which we think apply with equal force to the case we are now considering : "The plaintiff's conduct can be viewed in no other light than as a waiver of a compliance with the condition of the bond, and I see no infringement of any rule or principle of law in permitting parol evidence of

such waiver. It is a sound principle, that he who prevents a thing from being done, shall not avail himself of the non-performance he has occasioned." The case of *Delacroix vs. Bulkley*, 13 *Wend.*, 71, which is perhaps one of the strongest cases that can be relied upon to support the plaintiff's view of this case, does not question the soundness of the principles announced in *Fleming vs. Gilbert*, but, on the contrary, sanctions them in the strongest terms.

In this case the proof is, the defendants, under the policy, elected to repair the machinery, as they were at liberty to do, and actually offered so to do, but, at the instance of the plaintiff, the repairs were not made within the time limited by the contract, in order that in the mean time he might be able to rebuild the house in which the machinery stood, and thus protect it from the weather. To allow the plaintiff under such circumstances to insist upon the strict letter of the covenant, would be wholly to repudiate the sound and equitable principles established in *Fleming vs. Gilbert*.

Other cases we think fully sustain the defences relied upon by the defendants in their several pleas. 1 *Espinasse*, 35. 14 *Johns.*, 330. 2 *Wendell*, 587. 1 *Bailey*, 538, *(note a.)* 1 *Roll. Abr.*, 553, *pl.* 5. 1 *Strange*, 535. *Doug.*, 691. 8 *Iredell*, 179. 10 *Iredell*, 193. *Breese Rep.*, 132. 22 *Eng. Com. L. R.*, 89. 23 *Ibid.*, 165. *Allegre vs. Md. Ins. Co.*, 6 *Har. & Johns.*, 408.

In a very recent English case, *Spence vs. Healey*, 20 *Eng. Law and Eq. Rep.*, 337, the defendant pleaded to an action of covenant, "that before action and *before any breach of the said covenant*, he satisfied and discharged the plaintiff's claim," &c. Baron Parke, in delivering the opinion of the court upon this plea, said, "the plea is bad. Wherever *damages only are sought to be recovered*, such a plea affords a good answer to the action; but where the covenant is for the payment of a sum certain, the covenantee has a right to object that the discharge is not by deed." Baron Martin concurred with Baron Parke, but even as to where *the sum is certain*, found "it difficult to see the correctness of the reasons upon which the

rule is founded." In this sentiment the judge who delivers this opinion fully concurs.

The prominent characteristic which distinguishes this case from the case of *Watchman and Bratt, vs. Crook*, 5 *Gill & Johns.*, 239, so strongly pressed upon us in argument by the appellee's counsel, consists in the circumstance, that here the alleged parol agreement is offered by way of *defence* to a recovery for a breach of the covenant, while in the former case the parol agreement was deemed inadmissible as evidence for the plaintiff, who was seeking to enforce the covenant. In such a case the plaintiff is held to abide strictly by the form of action which he may have selected.

If the doctrines of *Watchman vs. Crook*, are to control this case, as contended by the appellee, to what result would they lead? The insurance company having made a valid parol agreement relating to the policy of insurance, with which they had complied in good faith, and had thus morally, at least, discharged their obligations to the plaintiff, are not permitted to set up that agreement as a defence to an action on the covenant, but on the contrary, the making, and compliance with that agreement, are to constitute the breach of the original covenant, and furnish the basis for the damages assessed by the jury. But we are told, that under the authority of *Watchman and Bratt, vs. Crook*, the defendants, while they could not set up this parol contract against the covenant, would nevertheless have an independent right of action against the plaintiff for its violation. If this be true, what would be the measure of damages in an action upon this parol agreement? Clearly the appellants would be entitled to recover from the appellee, what the latter had before recovered from them in this action of covenant. It must be conceded, if Smith's and Neale's testimony is to be believed, the appellants were in no default in this transaction, and therefore unless they recovered in the subsequent suit from the appellee, the same amount which he had previously recovered in this action, injustice would be done to the extent precisely of the difference between the two verdicts. Can any principle of law be sound

or just that would not only sanction, but require such circuity in legal proceedings to attain the ends of justice?

The case of *Watchman, et. al., vs. Crook,* does not sanction such a circuitous proceeding. That case decides, that the *plaintiffs* having selected to sue in covenant, cannot in that action give in evidence a parol agreement varying or changing its terms. If they desired to abandon the covenant and sue to enforce the parol contract, they ought to have selected the proper form of action for that purpose. But the court have not said in that case that a defendant could not avail himself of such a defence, though it rested in parol in a suit to enforce the covenant.

The case of *Jewell and others, vs. Schroeppel,* 4 *Cowen,* 564, might be supposed to favor a different doctrine. It appears that the covenant in that case had not been complied with within the time specified, though the work to be done was afterwards, with the knowledge and approbation of the covenantee, prosecuted and completed by the covenantor. The former brought a suit against the latter on the covenant, for not having completed the work according to the contract, and recovered damages for its breach. Subsequently the covenantor sued in *assumpsit* for his work, labor, &c., (which is the case reported in 4 *Cowen,*) and also recovered for the work actually done.

The suit on the covenant differs materially from the one now before us. In the first place, it does not appear whether the defendant set up as a defence to the action on the covenant the facts which constituted the grounds of his recovery in his subsequent action of *assumpsit;* and in the second place, it does not appear in the reported case whether the failure to complete the work within the time prescribed by the covenant resulted from any act of the plaintiff in the first suit. In such a case, if the work was not completed within the period stipulated, though it should be done and accepted afterwards, it would amount to a breach of the covenant, for which damages could be recovered; otherwise, however, if the time of the performance of the covenant had been enlarged, as in this case, with the approbation or at the instance of the covenantee.

A defendant should never be prevented from making a just and moral defence to any action instituted against him merely because he might, in the character of plaintiff, enforce that defence in a separate and independent action at law. This principle, however, in actions of covenant must be taken as applicable in general to defences resting upon parol agreements which have arisen subsequent to a breach of the covenant, or after the happening of the event by which the liability of the defendant has become fixed.

If then in this case it be ascertained, that at the time the alleged parol agreement was made, a breach of the covenant had taken place, or that the liability under it had accrued and become fixed by the occurrence of the fire and the defendants' election to repair, then the new parol contract must be taken as a discharge of the defendants' obligation under the covenant.

The argument of the appellee's counsel upon this point seems to be based upon the assumption, that the breach or liability, and the right to sue, in every instance, were inseperable, and occur at one and the same moment. This is not true, at least in this case. The attaching of the defendants' liability will be attended with the same legal consequences as if a breach in its technical sense had taken place, though the right to sue had not accrued. When the company *elected* to repair the machinery their liability commenced, if it did not, in fact, date from the time of the fire. After the defendants elected to repair, their obligation to do so, within the thirty days, became as clearly determined as their obligation to pay the damages in money, after the expiration of the thirty days, would have been; and in either case it will readily be seen that any adjustment between the parties, by way of enlarging the time of performance, or waiver, or accord and satisfaction, or tender to perform, and the like, must have taken place before the obligation was discharged, or otherwise it would have been of no avail.

If, as is contended, the grounds of these defences, to be binding, could only arise after the expiration of the thirty days, stipulated in the contract, and after the right to sue accrued, it is plain that the defendants would be deprived either of the

alternative right to repair or of the equally clear right of tendering to perform, offering accord and satisfaction, accepting an enlargement of the time within which the repairs were to be made, &c.

It would seem that *accord and satisfaction* was something other than *strict performance or payment.* It is doing that by the covenantor which the covenantee accepts in lieu of a performance of the terms of the covenant. If this be true, at what period could the defendants in this action tender accord and satisfaction, and the plaintiff accept the same in reference to the former's obligation to repair, unless it was done during the interval of the thirty days, allowed for making the repairs? Before the fire, or proof of damage, there was nothing to accord and satisfy. After the repairs were made, in accordance with the terms of the covenant, it would then be too late to accord and satisfy, or to make any adjustment, at least, of that branch of the defendants' liability.

We are, for the reasons expressed, of the opinion, that the testimony of the witnesses, Neale and Smith, was admissible under the pleadings in the cause, and that it was error in the court below to reject it. We therefore reverse the judgment and remand the cause.

*Judgment reversed and procedendo awarded.*